THOMAS R. GILLIGAN, Respondent, *v.* JAMES FARMER et al., Appellants, et al., Defendants.

First Department, April 25, 1968.

*Bradley R. Brewer* of counsel (*Denison Ray* and *Stephen Nagler* with him on the brief; *Bradley R. Brewer, Eugene G. Eisner* and *Carl A. Rachlin,* attorneys), for appellants.

*Lewis S. Sandler* of counsel (*Saxe, Bacon & Bolan,* attorneys), for respondent.

*Per Curiam.* In this appeal from an order denying a motion to dismiss a complaint sounding in libel, we agree with the dis-

senting Justice that there is nothing in plaintiff's affidavit tending to connect the individual defendant Farmer with the alleged defamation. While a majority of the court is of the opinion that the rule announced in *New York Times Co.* v. *Sullivan* (376 U. S. 254) is applicable to the case against the defendant Congress of Racial Equality (CORE), the present record does not justify summary determination of CORE's responsibility for the poster or, if it was responsible, of the issue of actual malice.

Accordingly, the order should be modified, on the law, to the extent of granting the motion as to defendant Farmer, and otherwise affirmed, without costs and without disbursements, with leave to defendant CORE to renew its motion, if so advised, after joinder of issue and completion of pretrial disclosure procedures.

STEVENS, J. (dissenting). Defendants Farmer and Congress of Racial Equality, Inc. (CORE) appeal from an order entered November 1, 1965, which denied their motion to dismiss the complaint pursuant to CPLR 3211 (subd. [a], par. 7) i.e., insufficiency, and under subdivision (c) to have the motion treated as one for summary judgment. This is one of three appeals argued or submitted together. In two of the actions plaintiff seeks damages for libel and conspiracy. In the third action plaintiff seeks damages for slander. The underlying facts which gave rise to the incidents complained of are set forth fully in this dissent and only brief reference will be made to them in other writings.

This action is brought to recover monetary damages for an alleged libel and conspiracy. It is premised upon a poster which appeared on or about July 18, 1964. It is described as follows: "Wanted For Murder" printed above a picture of plaintiff in uniform, below which appeared "Gilligan, the cop, Lieut. Thomas Gilligan of the 14th Division", under which is drawn a line in the center of the poster, and below the line "Harlem Defense Council, 336 Lenox Ave., N. Y. C. Fi. 8–2254." The libel, if any, must be found in the juxtaposition of the words "Wanted For Murder" with the picture and identification of the plaintiff.

The incident which gave rise to the publication of the alleged libel as well as the alleged slander was a homicide which occurred July 16, 1964. Plaintiff, described as six feet two inches tall, weighing 200 pounds, who on several occasions allegedly had disarmed men with guns, while off duty shot and killed a boy, age 15, 5 feet 6½ inches tall, who weighed 122 pounds. Accounts differ as to whether or not the boy was in possession of a knife with a three and one-half inch blade and whether or not he struck at the officer prior to the killing. Three shots were fired by the

officer, two of which lodged in the boy's body, either one of which could have proved fatal.

Plaintiff in his complaint alleges he is a police lieutenant, and has been a policeman for 17 years, during which time he has received 1 Exceptional Merit Award, 3 Accommodation Awards and 10 Excellence Awards from the Police Department. He charges a conspiracy by these appellants and others to defame and injure him in his good name and reputation, and alleges upon information and belief they participated in the preparation and publication of the poster, above described, with actual malice and with reason to believe the words " Wanted For Murder " to be false. Plaintiff makes no other reference to homicide in his complaint though he does relate his version of the occurrence in his affidavit submitted in opposition to the motion to dismiss the complaint.

Farmer, who was then National Director and chief executive officer of CORE, and CORE moved to dismiss the complaint. In his affidavit in support of the motion Farmer stated flatly that neither he nor CORE was, or ever had been, a member of or affiliated with either the Harlem Defense Council or the Progressive Labor Movement. Farmer denied participation in any conspiracy by himself or CORE, and in fact that he had ever even heard of plaintiff prior to July 16, 1964. Farmer denied that he or CORE had anything to do with the preparation or publication of the poster, had ever been consulted about it before publication or knew of its existence prior to completion and circulation. Farmer denied the existence of a policy by himself or CORE to injure plaintiff, or even that he, up to the date of his affidavit (September 10, 1965), knew who printed the poster or arranged for its circulation.

In opposition to the motion to dismiss, plaintiff alleges he commenced this action against Farmer and CORE following the appearance of the poster. This despite the fact that neither the name of Farmer nor of CORE appears on the poster. Plaintiff asserts his ground for the conspiracy charge " is based on the fact that when various news media interviewed persons carrying the placards, or distributing the handbills [above described] * * * many of these persons indicated they were acting as members of the Congress of Racial Equality, Inc." No attempt is made to identify the news media or the persons interviewed, nor is it asserted that Farmer or CORE authorized such persons, whoever they were, to appear for or represent either Farmer or CORE.

In the succeeding paragraph of his affidavit plaintiff asserts: " I have no personal knowledge, however, of the exact extent

to which the defendants James Farmer and the Congress of Racial Equality, Inc. participated in the conspiracy, as this information is exclusively within the knowledge of these defendants.'' The conclusion is irresistible that plaintiff merely cast his lawsuit net into the sea of civil rights workers and organizations hoping, willy-nilly, to snare them in its mesh.

In a motion pursuant to CPLR 3211 (subd. [c]) '' either party may submit any evidence that could properly be considered on a motion for summary judgment and the court *may* treat the motion as a motion for summary judgment '' (emphasis supplied). Both parties submitted affidavits on the motion below. Under such circumstances it was incumbent upon the plaintiff to come forward with some evidentiary fact tending to support the charges made in his complaint. This he has failed to do and the motion to dismiss should have been granted. To permit continuance of the action against these appellants upon the bare possibility or hope that plaintiff prior to trial may, in some fashion or manner, discover something which might give color or support to his claim is to unfairly penalize these appellants and unduly impose the further expense of possible protracted litigation. When the accuracy of a pleading is challenged pursuant to CPLR 3211 (subd. [c]) by matters dehors the pleading, the assumption that the facts occurred as stated in the pleading no longer obtains. CPLR 3211 (subd. [c]) authorizes what is termed a '' speaking '' motion. When used such motion may test the truth and factual content of the pleading to which it is addressed (see, 4 Weinstein-Korn-Miller, pars. 3211.43, 3211.44, 3211.49 *et seq.*). While the statute vests discretion in the court as to whether the motion shall be treated as one for summary judgment, this case, in my view, warrants such treatment and I would dismiss the complaint.

Since the issue of defamation is common to each of the three appeals, and all have their genesis in the homicide of July 16, 1964 — at least as the inspirational or causal factor — some aspects of the law of defamation are discussed. Initially the possible status of plaintiff as a public official or a public figure, or both, should be considered.

As a lieutenant plaintiff is a member of the hierarchy of police officialdom, vested with certain discretionary powers. His duties generally are of a public character involving protection of the citizenry. His employer, the municipality, may be liable for plaintiff's acts of misconduct or negligence when committed within the scope of the performance of his official duties. The public, which bears the expense of maintaining a police department, may rightfully be concerned with the operation of its

police department. Plaintiff, having achieved a position of responsibility, can expect his official conduct to be subject to public scrutiny and public criticism. Plaintiff is a public official, or at least a public officer (Penal Law, § 1055), much decorated, each award, presumably, having been attended by some ceremony. He had become newsworthy and was also somewhat of a public figure. When he killed Powell on July 16, 1964, the attendant circumstances immediately projected him further into the spotlight and he became, if not before, a public figure (cf. *Associated Press* v. *Walker,* 388 U. S. 130).

As was noted in an earlier case (*Cole Fischer Rogow, Inc.* v. *Carl Ally, Inc.,* 29 A D 2d 423, 426), "the court is not bound to take judicial notice of matters of fact. However, it may and frequently does so where 'the nature of the subject, the issue involved and the apparent justice of the case' (*Hunter* v. *New York Ontario & Western R. R. Co.,* 116 N. Y. 615, 621) so dictate." Judicial notice is taken that the killing of Powell aroused a storm of protest in large segments of the community, while others either approved of the act or were silent. Hardly anyone was indifferent. Sensing this, the District Attorney of the County of New York took the very unusual step of releasing the result of his investigation by making a public report in September, 1964.

Persons who might have disapproved of the killing or critically questioned the alleged surrounding circumstances are not afforded total immunity for any and all speech or publications. Plaintiff, as a public official and a public figure, is allowed to recover if he is libelled. He must show, however, that the libel was the result of actual malice, that is, with knowledge that it was false or with a reckless disregard of whether it was false or not (see *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 280; cf. *Jacobowitz* v. *Posner,* 28 A D 2d 706, affd. 21 N Y 2d 936). If the official conduct of a police official is immune to critical appraisal or public disapproval he becomes a preferred member of society. Public opinion, which is the most effective check of official abuse, can never be aroused and any and all acts of such official are protected either by a veil of secrecy or the critic is subjected to costly litigation. The right of fair and free comment is essential to society's well-being. Here plaintiff's justification or immunity from punishment is founded, in part, upon his classification of "police officer" (Penal Law, § 1055).

It is doubtful had plaintiff been referred to as a "killer" that there would have been any cause of action. The term would have been legally accurate. Only a possible connotation could

have rendered it objectionable. Here a homicide occurred and a homicide is defined as '' the killing of one human being by the act, procurement or omission of another '' (Penal Law, § 1042). Thus, one who kills another, with or without justification, may be termed a '' killer.'' Murder, of course, involves a homicide which is neither excusable nor justifiable. It is doubtful that the public mind is aware of the fine distinction.

The publication of the poster followed closely on the heels of the homicide. It is doubtful that even the District Attorney had commenced or made substantial progress into any investigation. Various accounts of the killing by alleged eyewitnesses circulated freely. The individual conclusion depended upon the account accepted. Unless the conclusion represented by the poster could not reasonably have been drawn from the facts then available, or ascertainable after reasonable investigation, or the inference was one no fair-minded person could draw, a charge of libel cannot be sustained without proof of actual malice. Even an official investigation did not establish the fact of falsity.

A reasonable basis, or at the very least, probable cause for use of the term '' murder '' is shown by the fact that substantial segments of the community differed as to whether the homicide was murder or self-defense, i.e., justifiable homicide (Penal Law, § 1055). Nor can it be concluded that the expression as an expression of opinion, represented an inference which no fair-minded person could draw, under the circumstances, from the undisputed facts.

The report of an extensive investigation undertaken by the District Attorney of New York County was released in September, 1964. The report included differing versions by persons who, allegedly, were eyewitnesses to some if not all of the events which culminated in the killing. According to the report there were no smoke, flame or powder marks on the body and no powder burns or scorch marks on the clothing. If the eyewitnesses could differ to the extent, depending upon the version accepted, that the homicide could be justifiable or unjustifiable, certainly a nonwitness could reasonably have concluded, initially, from available accounts that it was murder. Although no indictment was returned, the report neither conclusively established self-defense nor negated it. A failure to indict is not an acquittal of a charge. It merely establishes that the Grand Jury concluded there was insufficient evidence before it which, if unexplained or uncontradicted, would warrant conviction by a trial jury (Code Crim. Pro., § 251) and does not bar resubmission (Code Crim. Pro., § 270).

Again, it should be emphasized that neither Farmer's name nor that of CORE appears upon the poster. Nothing beyond a bare allegation upon information and belief, the sources of the information and the basis for the belief not being indicated when challenged, and a vague reference to various media and unidentified persons even attempts to bind them. There is absolutely nothing in this record from which malice with respect to these appellants could even reasonably be inferred (cf. *Shapiro* v. *Health Ins. Plan*, 7 N Y 2d 56). Mere carelessness or negligence, if it could be shown, which I doubt, is not malice. Nor has plaintiff come forward with a single evidentiary fact to show or establish a conspiracy in which these appellants were involved.

For the foregoing reasons I dissent, and vote to reverse and dismiss the complaint.

BOTEIN, P. J., EAGER, CAPOZZOLI and McGIVERN, JJ., concur in *Per Curiam* opinion; STEVENS, J., dissents in opinion.

Order entered on November 1, 1965, modified, on the law, to the extent of granting the motion as to defendant James Farmer, and, as so modified, affirmed, without costs or disbursements, with leave to defendant Congress of Racial Equality to renew its motion, if so advised, after joinder of issue and completion of pretrial disclosure procedures.